## Gettys v. Dillsburg Borough

*John G. Williams, William K. Wright* and *Shumaker, Williams & Placey*, for plaintiffs.

*P. Nelson Alexander*, for defendants.

SHADLE, J., February 28, 1972.—In this action of mandamus, plaintiffs moved for summary judgment under Pennsylvania Rule of Civil Procedure 1098, on the ground that "the right of the plaintiff thereto is clear." After notice to defendants, argument was had before the court.

Plaintiffs filed with defendant borough an application for approval of plans and specifications to establish within the borough a mobile home development.

The application was pursuant to a borough ordinance regulating the emplacement of trailers or mobile homes within the borough. Although the parties disagree as to the date when such filing took place, they do agree that it was at least by October 4, 1971. After a number of maneuverings and communications by both sides, at a meeting of the borough council held on January 18, 1972, the application was disapproved. Notice of such action was mailed to plaintiffs on January 26, 1972.

Briefly stated, plaintiffs contend that the failure of defendant borough to take definitive action on the application between October 4th and January 18th constituted approval of it as a matter of law. They, therefore, brought this action in mandamus to compel defendants to evidence such approval by signing plaintiffs' plans so that the same might be recorded and the development be proceeded with. On the other hand, defendants claim essentially that they had the right to conduct public hearings on the application, which they did, and that their disapproval action was taken within the time provided by law. It may be noted parenthetically that prior to the instant motion defendants filed preliminary objections to that portion of plaintiffs' complaint seeking subsidiary relief in the form of damages, asking that the damages be pleaded more specifically. However, this subsidiary issue has no bearing on plaintiffs' right to the relief sought by the instant motion.

The crucial law is that contained in the Pennsylvania Municipalities Planning Code of July 31, 1968, P. L. 805, 53 PS §10101, et seq. Section 508 of that act, 53 PS §10508, on which plaintiffs rely, provides as follows:

"All applications for approval of a plat (other than those governed by Article VII) . . . shall be acted upon

by the governing body . . . within such time limits as may be fixed in the subdivision and land development ordinance but the governing body . . . shall render its decision and communicate it to the applicant *not later than forty days after such application is filed.*

"Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented." (Italics supplied; amended in 1972 to increase time to 90 days.)

It is this provision upon which plaintiffs rely.

The position of defendants is, first, that plaintiffs' project is not, in fact, a "subdivision" to which Article V of the code relates because plaintiffs do not contemplate sale of their lots but only rental of them for mobile home locations. Conceding that this is so, the definitions contained in section 107 of the code, 53 PS §10107, do not support defendants' position. Subsection 21 thereof defines a "subdivision" as "the division . . . of a . . . parcel of land . . . into two or more lots, tracts, parcels or other divisions of land . . . for the purpose . . . of lease, transfer of ownership or building or lot development." Likewise, subsection 11 of section 107 defines "land development" as "the improvement of one . . . or more contiguous lots . . . for any purpose involving (a) a group of two or more buildings, or (b) the division or allocation of land between or among two or more existing or prospective occupants." We find, therefore, that plaintiffs' project is a subdivision or land development.

Defendants rely more heavily upon sections 708 and 709 of the code, 53 PS §10708, 10709, as to the time allotted them to act upon the application. It will be noted that section 508, supra, excepts from its time provisions applications governed by Article VII.

Section 708 provides as follows:

"(a) Within sixty days after the filing of an application for tentative approval of a *planned residential development pursuant to this article* [*VII*], a public hearing pursuant to public notice on said application shall be held by the governing body . . .

"(c) The governing body may continue the hearing from time to time, and may refer the matter back to the planning agency for a report, provided, however, that in any event, the public hearing or hearings shall be concluded within sixty days after the date of the first public hearing." (Italics supplied.)

Section 709 then adds:

"(a) The governing body within thirty days following the conclusion of the public hearing . . . shall . . . either: (1) Grant tentative approval of the development plan as submitted; (2) Grant tentative approval subject to specified conditions . . . or (3) Deny tentative approval . . . Failure to so act within said period shall be deemed to be a grant of tentative approval of the development plan as submitted."

Consequently, defendants argue that they had a total of 150 days within which to conduct public hearings and consider and act upon the application, and that they did comply within that time limit.

However, defendants' reliance is misplaced. All of Article VII is concerned with a technical land development device known as a "planned residential development" as an exception to the traditional lot-by-lot zoning process described in Article VI. An examination of the purpose clause in section 701, 53 PS §10701, clearly shows this.

As defined in subsection 14 of section 107 of the code, supra, a "planned residential development" is "an area of land . . . to be developed as a single entity for a number of dwelling units, the development plan

for which *does not correspond . . . to the regulations established in any one residential district created . . . under the provisions of a municipal zoning ordinance."* (Italics supplied.) Consequently, a "planned residential development" cannot exist except as a modification of an existing zoning ordinance, nor could plaintiffs' plan fall within that category. Although defendant borough does now have a zoning ordinance, it was not adopted until January 18, 1972, effective as of February 1, 1972, which was long after plaintiffs submitted their application, and after approval thereof occurred by the operation of section 508, supra.

Defendants further contend that the Pennsylvania Municipalities Planning Code does not apply to or supersede an ordinance such as that here involved, "regulating the emplacement of trailers or mobile homes." However, an examination of the comprehensive and all-inclusive purpose of the code in section 105, 53 PS §10105, and the repeal by section 1201, 53 PS §11201, of all of the prior provisions of The Borough Code of February 1, 1966, P. L. (1965) 1636, 53 PS §45101, et seq., relating to planning, land subdivision, creation of streets and public improvements, and the zoning process, leads us to conclude that the Planning Code does control and supersede the ordinance relating to emplacement of mobile homes insofar as such ordinance does involve those enumerated functions as this one does.

Defendants also argue that granting the relief here sought would be futile, since plaintiffs still would have to, and cannot, comply with the subsequently enacted zoning ordinance. Subsection 4 of section 508 of the Planning Code, supra, would seem to indicate to the contrary. However, this issue is not presently before us, and we specifically refrain from expressing any opinion thereon.

Defendants point to the provisions of section 509, 53 PS §10509, of the Planning Code, that "No plat shall be finally approved" unless the municipal improvements shown thereon have either been installed or security has been posted for installation, as required by their mobile home ordinance. They contend, therefore, that since such work has not yet been done or secured, final approval has not occurred, and that a determination of whether, when, and in what manner this has been accomplished calls for an exercise of discretion by the borough authorities which cannot be controlled by mandamus.

Both arguments clearly are incorrect. The intent of section 508, that failure of municipal authorities to timely act shall constitute approval, cannot be subverted by the subsidiary requirement for installation of improvements. Otherwise, the applicant could not obtain approval until he constructed improvements and could not construct improvements until he obtained approval. Rather, the effect of section 509 is that despite the automatic plan approval occurring under section 508, the applicant still is bound to furnish such of the improvements required by the ordinance as are shown on the plan (the application being approved "in terms as presented."). Should he fail to do so, remedies are provided in Article V. The contention that discretionary evaluation of improvements prevents summary judgment at this time is misplaced. The requirement that defendants now evidence by their signatures their tacit section 508 approval of the plan will in no wise hamper their later determination and evaluation of the improvements to be installed if such discretion is properly exercised.

Defendants argue that, in their opinion, plaintiffs' project will have a deleterious effect on a comprehensive regional development plan which has been pre-

pared for the entire area, as well as upon the zoning scheme which the borough has adopted. We sympathize with defendants and share their regret if this should occur. However, we are compelled to agree with the statement in B. J. Development Corp. Appeal, 18 Chester 98 (1970), which concerned a similar situation:

". . . the legislature had in mind specifically to remedy much of the prior abuses of time, uncertainty, and costly delays occasioned by indecision, vague recommendations, protracted deliberations of planning commissions . often followed by protracted supervisors' meetings and all too frequent deliberate or negligent inaction on the part of governing officials."

Under no circumstances, do we attribute any such tactics or motive to defendants here. However, we are bound by the plain purpose and intent expressed by the legislature, and there is no choice but to comply therewith. We emphasize, however, that the relief here granted is in no way concerned with coercing or controlling discretion of the borough authorites to approve or disapprove municipal development. On the contrary, we simply are required to induce the borough authorites to evidence in writing the approval of plaintiffs' plan which the legislature declared occurred when defendants failed to properly disapprove the same within the time provided by law.

## ORDER

And now, February 28, 1972, plaintiffs' motion for summary judgment is granted, and defendants are ordered and directed to note their approval and to place their signatures for that purpose upon plaintiffs' plan of Pin Oak Park, without prejudice, however, to the right of defendants to pursue their preliminary ob-

122

jections to plaintiffs' complaint, or to the right of plaintiffs to seek any additional relief as prayed for in their complaint. An exception is noted for defendants.

The prothonotary shall forthwith furnish copies of this opinion and order to counsel for both parties.